1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

JEFFREY L. and SANDRA L. STEPHENS,      Chapter 7
Case No. 09-62630

Debtors.

---

APPEARANCES:

STEPHEN R. DOLSON, ESQ.
*Attorney for Debtor*
The Law Offices of Steven R. Dolson, PLLC
126 North Salina Street, Suite 3B
Syracuse, NY 13202

THOMAS PAUL HUGHES, ESQ.
*Chapter 7 Trustee*
23 Oxford Road
New Hartford, NY 13413

TRACY HOPE DAVIS                                    GUY A. VAN BAALEN, ESQ.
*United States Trustee for Region 2*
Office of the United States Trustee
10 Broad Street, Room 105
Utica, NY 13501

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the Court is a Motion for Turnover of Non-Bankruptcy Estate Funds ("Motion," ECF

No. 45) filed by Debtors Jeffrey L. and Sandra L. Stephens ("Debtors") on March 17, 2011.  Debtors

seek to have Chapter 7 Trustee Thomas Paul Hughes ("Trustee") turnover surplus proceeds resulting

from the post-discharge auction sale of non-exempt personal property, which Debtors elected to

surrender pursuant to 11 U.S.C. § 521(a)(2).[1]  The question presented is whether the non-exempt

---

1.  Unless otherwise indicated, statutory citations are to the United States Bankruptcy Code, 11
U.S.C. §§ 101-1532 (2006) ("Code"), as amended by the Bankruptcy Abuse Prevention and

2

proceeds belong to Debtors by operation of § 362(h) or, alternatively, whether they remain property

of the estate for the benefit of creditors.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§157(a), (b)(1),

and (b)(2)(A), (G), and (O), and 1334(a) and (b).  This decision constitutes the Court's findings of

fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

Debtors filed a voluntary petition ("Petition," ECF No. 1) under chapter 7 of the Code on

September 18, 2006.  Along with the Petition, they filed their required statement of intention

("SOI"), stating therein an intent to surrender a 2003 Starcraft Trailer ("Trailer").  Debtors disclosed

the Trailer on Schedule B titled "Personal Property" as having a value of $3,150.00, and on Schedule

D titled "Creditors Holding Secured Claims" as being encumbered by a lien held by M&T Bank

("M&T") in the amount of $398.00.  Debtors did not claim the Trailer as exempt in Schedule C titled

"Property Claimed as Exempt."  Pursuant to § 341(a), the Trustee held the first meeting of creditors

("§ 341 Meeting" or "Meeting of Creditors") on October 28, 2009.  The next day, the Trustee filed

an Application for Appointment of Counsel for Trustee ("Application," ECF No.16) to address the

"[d]isposition of personal property not claimed or allowed as exempt property."  He did not seek a

determination pursuant to § 362(h)(2).  The Court granted the Trustee's Application by Order dated

November 9, 2009 (ECF No. 17), and on December 23, 2009, the Trustee filed a Notice of Asset

Case under § 726 (ECF No. 25).  On March 12, 2010, Debtors received their Discharge (ECF No.

Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005,
effective October 17, 2005, and rule citations are to the Federal Rules of Bankruptcy Procedure
("Rules").

3

39).  After the Discharge issued and pursuant to its state law rights, M&T repossessed the Trailer and

sold it at auction.  M&T's sale of the Trailer resulted in a surplus of $1,637.33, which M&T remitted

to the Trustee on or about June 7, 2010.  On March 7, 2011, Debtors filed the instant Motion.  The

Trustee filed a response to the Motion (ECF No. 48) on March 24, 2011.  On April 14, 2011, the

Court heard oral arguments and then provided the parties with an opportunity to submit memoranda

of law in support of their respective positions.  At the adjourned hearing on May 12, 2011, the Court

heard additional arguments before taking the matter under advisement.  The Trustee is presently

holding approximately $8,500.00, which sum includes the non-exempt proceeds from the sale of the

Trailer.

## ARGUMENTS

Debtors contend that although they timely filed their SOI with their Petition, they failed to

surrender the Trailer to M&T as required under § 521(a)(2).  Debtors suggest that they failed to

"perform" as contemplated by § 521(a)(2) because they did not deliver the Trailer to M&T.  Debtors

argue their failure to perform, coupled with the fact that the Trustee did not bring a motion under §

362(h)(2) to preserve the asset for the estate, caused the automatic stay under § 362(a) to terminate

by operation of § 362(h)(1).  Therefore, they contend that the Trailer was no longer property of the

estate when M&T repossessed and sold it pursuant to its state law rights.  Debtors argue that the

Trustee effectively abandoned the Trailer and therefore ask this Court to find that the non-exempt

proceeds now belong to them.

The Trustee raises several arguments against the applicability of § 362(h)(1) in this case.

First, the Trustee contends that the removal of personal property from a bankruptcy estate by

operation of § 362(h)(1) cannot be considered abandonment because property of the estate can only

4

be abandoned by a trustee pursuant to § 554. Because the Trustee did not seek a court order under

§ 554, and Debtors did not claim the subject property as exempt, he avers that the Trailer remained

property of the estate as defined under § 541. Next, the Trustee argues that because § 362(h)(1) is

written in the conjunctive, a plain reading of the statute requires a debtor's lack of compliance with

both subsection (A) as well as subsection (B) for the automatic stay to terminate. Debtors, however,

complied with subsection (A) by timely filing a proper SOI with the Petition. Therefore, he believes

that the automatic stay did not terminate by operation of § 362(h)(1) because one of the two

requisites of provision § 521(a)(2) was satisfied. Third, the Trustee asserts that Congress did not

intend for § 362(h) to apply to the surrender or redeem electives. Rather, the Trustee argues that

Congress added § 362(h) to the Code to terminate the automatic stay by operation of law in order

to prevent debtors from being able to retain property without either redeeming it or reaffirming debt

that it secures, which has commonly been referred to as a "ride through" or "fourth option"

sanctioned pre-BAPCPA by several circuit courts of appeals. Thus, the Trustee asserts that the

amendment was not intended to alter the respective positions of trustees or debtors. Finally, and in

the alternative, the Trustee argues that § 362(h) does not apply in the case at hand because Debtors

properly filed their SOI and acted in a manner consistent with their stated intention.

### DISCUSSION

The present case involves the scope and operation of § 521(a)(2) and § 362(h) as enacted by

BAPCPA. Because this case presents questions of statutory interpretation, the Court is required to

start "where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA

Card Servs., N.A. (In re Ransom)*, 131 S. Ct. 716, 723-24 (2011) (quoting *United States v. Ron Pair

Enters. Inc.*, 489 U.S. 235, 241 (1989)). The Court begins with the "principle that a statute ought,

upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1111 (9th Cir. 2009) (quoting *TRW, Inc. v. Andrews*, 534, U.S. 19, 31 (2008) (internal quotation marks omitted)). "Courts should decline to render any 'express exception . . . insignificant, if not wholly superfluous.'" *Id.* "However, according to the plain meaning rule, 'where the language of an enactment is clear [or, in modern parlance, plain], and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended.'" *Id.* (quoting *United States v. Mo. Pac. R.R.*, 278 B.R. 269, 278 (1929)); *Samson v. Western Capital Partners, LLC, (In re Blixseth)*, 454 B.R. 92, 98-99 (B.A.P. 9th Cir. 2011) ("Where the language is plain and does not lead to absurd or impractical consequences, the words are taken as the final expression of the meaning intended.").

In considering the effect of pre-BAPCPA § 521(2), most courts held that it was primarily a notice statute that provided a secured creditor with information concerning a debtor's intention regarding certain personal property early in the case. *Green Tree Fin. Serv. Corp. v. Theobold (In re Theobold)*, 218 B.R. 133, 136 (B.A.P. 10th Cir. 1998).[2] The statute was not designed to provide creditors with a mechanism to avoid obligations imposed by state law or to create substantive rights because pre-BAPCPA § 521(2)(c) clearly provided that subsections (A) and (B) did not alter a

---

2.  *See also, e.g., In re Cornejo*, 342 B.R. 834, 835 (Bankr. M.D. Fla. 2005) (the purpose of former § 521(2) is to provide secured creditors notice of debtor's intentions with respect to the retention or surrender of collateral); *Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 51 (2d Cir. 1997) (former § 521(2) "appears to serve primarily a notice function, not necessarily to restrict substantive options available to a debtor who wishes to retain collateral that secures a debt."), *cert. denied*, 118 S. Ct. 1055 (1998).

debtor's or trustee's rights with respect to certain property.  *In re Theobold*, 218 B.R. at 135-36.[3]

In 2005, Congress revised § 521 to provide in pertinent part:

> if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate -
>> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
>> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
>> (c) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h).*

11 U.S.C. § 521(a)(2) (emphasis added).[4]  Post-BAPCPA, this provision contains an exception

provided in § 362(h) that addresses what will happen when a debtor fails to comply with § 521(a)(2)

directives.   Although nothing in § 521(a)(2)(A) or (B) alters the debtor's or trustee's rights,

subsection (c) connects § 521(a)(2) to § 362(h).  The latter of which provides:

> (1) In a case in which the debtor is an individual, the stay provided by subsection (a)[5] is

---

3.  *In re Cassar*, 139 B.R. 253 (Bankr. D. Colo. 1992) (when the debtor timely states an intention to reaffirm a debt but decides thereafter to instead redeem the debt on the collateral, the failure to comply with § 521(2) does not alter the debtor's right to redeem).

4.  The Rules provide that a debtor may amend his or her statement of intention at any time before the expiration of the period provided in § 521(a)(2) as long as notice of the amendment is provided to the trustee and any party affected by the amendment. Fed. R. Bankr. P.1009(b).  If applicable, the debtor must specify in his or her statement of intention that the property to be surrendered or retained is claimed as exempt.  *See* 11 U.S.C. § 521(a)(2)(A).

5.  "The automatic stay imposed by § 362(a) that arises upon the filing of the bankruptcy petition is one of the 'cornerstones of bankruptcy law.'" *Ostrander v. Source One Fin. Corp., (In re*

terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate[6] if the debtor fails *within the applicable time set by section 521(a)(2)--*

    (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; *and*

    (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specified the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed *before the expiration of the applicable time set by section 521(a)(2),* after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

11 U.S.C. § 361(h) (1)-(2) (emphasis added). *See also, In re Mollison*, 463 B.R. at 178 ("The crux

of § 362(h)(1) is its creation of a 'direct linkage' between a debtor's failure to comply with §

521(a)(2) and termination of the [a]utomatic [s]tay and removal of property from the bankruptcy

estate.") (citing *Noland v. HSBC Auto Fin. Inc. (In re Baine)*, 393 B.R. 561, 564 (Bankr. S.D. Ohio

---

*Mollison)*, 463 B.R. 169, 177 (Bankr. D. Mass. 2012) (quoting *In re Blake*, 452 B.R. 1,12 (Bankr. D. Mass. 2011) (internal citation omitted)).  Generally, § 362(a) provides that the automatic stay prohibits "any act to create, perfect, or enforce any lien against property of the estate" and "any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case." 11 U.S.C. § 362(a)(4)-(5). However, once the automatic stay terminates, either by court order on motion of an interested party, *see* 11 U.S.C. § 362(d), or without court order by operation of an applicable Code provision, *see* 11 U.S.C.§ 362(c), previously stayed actions are once again permitted unless the discharge injunction applies. *Id.*

6.  "Property of the estate" is broadly defined in § 541(a) as "all of a debtor's legal or equitable interests in property, wherever located, as of the commencement of the case." 11 U.S.C. § 521(a)(1).

8

2008)).  Contrary to the Trustee's argument, the nexus created between §§ 521(a)(2) and 362(h) does

affect a debtor's or trustee's rights as follows.  Under § 521(a)(2), absent a court approved extension,

an individual chapter 7 debtor whose schedules of assets and liabilities include debts secured by

personal property of the estate must file a statement of intention  "within thirty days after" the filing

or "on or before the date of the meeting of creditors," whichever date is earlier, and state an intention

to either retain or surrender the personal property.[7]  Then the debtor must "perform" the stated

intention within 30 days of the initial § 341 meeting of creditors.[8]  If a debtor fails to comply with

either of these § 521(a)(2) directives, then by operation of § 362(h) and without a court order, the

automatic stay terminates and the personal property is removed from the estate.  *In re Mollison*, 463

at 178;  *In re Baine*, 393 B.R. at 564; *In re Dumont*, 383 B.R. at 486.  While this result may be harsh,

particularly in chapter 7 asset cases, it is not absurd.  *In re Blixseth*, 454 B.R. at 98 (citing *Lamie v.*

*United States Trustee*, 540 U.S. 526, 538 (2004) (a plain, non-absurd meaning is enforceable even

if the outcome is harsh)).  This consequence can be avoided, however, and the chapter 7 trustee can

prevent the automatic stay from terminating by intervening and seeking under § 362(h)(2) "before

the expiration of the applicable time set in § 521(a)(2)" a determination that the "personal property

is of consequential value or benefit to the estate" and should remain in the estate. 11 U.S.C. §

362(h)(2); *In re Mollison*, 463 B.R. at 178;  *In re Norton*, 347 B.R. at 297-98 (timely filed motion

---

7.  The *Mollison* court has appropriately termed this two-pronged requirement as the "Filing
Requirement."  *In re Mollison*, 463 B.R. at 178-79 (noting that "the 'Filing Requirement' requires
the debtor to do both file the statement of intent *and* indicate whether the debtor intends to surrender
or redeem the property or reaffirm the underlying debt") (emphasis in original) (internal citations
omitted).

8.  The *Mollison* court has termed this the "Performance Requirement."  *In re Mollison*, 463 B.R.
at 180-81.

9

of the chapter 7 trustee coupled with the court's determination that property had consequential value for the estate and ordering of adequate protection to the creditor precludes termination of the automatic stay pursuant to § 362(h));  *In re Squires*, 342 B.R. 644 (Bankr. M.D. Fla. 2006) (amendment permits the trustee to intervene by filing a motion for a determination that the personal property is of consequential value or  the benefit of the estate).  Hence, the Trustee's argument that the post-BAPCPA statutory language does not alter the parties rights is no longer valid because the nexus created therein indicates otherwise.[9]

Next the Trustee suggests that § 362(h) applies only to cases involving debtors who attempt to retain collateral by continuing with payments on the debt without actually redeeming or reaffirming the debt securing the personal property.  Courts that have examined the purpose behind the enactment of § 362(h), have found:

> Section 362(h) was added to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) as part of the amendments characterized as "Protections for Secured Creditors."  H.R.Rep. No. 109-31(I), 109th Cong., 1st Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88,103. Section 362(h) was intended to provide greater protection to creditors by terminating the automatic stay with respect to personal property of the debtor if the debtor failed to timely reaffirm the underlying obligation or redeem the property.

*See In re Blixseth*, 454 B.R. at 99; *In re Mollison*, 463 B.R. at 177-79; *In re Dumont*, 581 F.3d at

---

9. As the *Mollison* court observed,
> 'Section 326(h) is a trustee land mine . . . .'  Wendell J. Sherk, *Section 362(h)* Deprives a Trustee of Property of the Estate, 30-8 Am. Bankr. Inst. J. 42 (Oct. 2011). The provisions of § 362(h) have the potential to strip bankruptcy estates of valuable property without court order or intervention.  Trustees will have yet another deadline and another duty to fulfill in order to preserve personal property that may have value for the estate.

*In re Mollison*, 463 B.R. at 189.  The stark reality is that chapter 7 cases move quickly.  Thus, it would appear prudent for a chapter 7 trustee to simultaneously seek relief under § 362(h)(2) when appropriate in chapter 7 asset cases when seeking appointment as counsel to the trustee.

1111-12.  While most of the decisions handed down since 2005 involve deciding whether the so-called "ride through" option survived the enactment of BAPCPA, the statute's stated purpose indicates that it also applies to the redemption option.  *See In re Herrera*, 454 B.R. 559 (Bankr. E.D.N.Y. 2011) (debtor's failure to perform his stated intention to redeem within time period established by statute resulted in termination of the automatic stay).  Neither of these options is before this Court, however, because the instant Debtors elected the surrender option.  Since the statute may be applied consistently irrespective of the option elected by the debtor, the Court will examine these cases for guidance to determine who prevails under the particular facts and circumstances of Debtors' case involving the surrender of personal property.

Section 362(h) begins with the proposition that the automatic stay will terminate if the debtor fails, within the applicable time periods set forth in § 521(a)(2), to file a proper statement of intention and to "perform" the stated intent.  This language is susceptible to two different interpretations.  *In re Mollison*, 463 B.R. at 180.  This could mean that § 362(h)(1)(A) authorizes termination of the automatic stay 30 days after the petition when a debtor fails to file a statement of intention with the petition, *see, e.g. In re Blixseth*, 454 B.R. at 92 (applying and extending this interpretation to both scheduled and unscheduled personal property); *In re Steinhaus*, 349 B.R. 694 (Bankr. D. Idaho 2006), or when a debtor fails to state an intention to surrender or to retain the property in the timely filed statement of intention, *In re Hoisington*, 383 B.R. 369, 372 (Bankr. D.S.C. 2008); *In re McFall*, 356 B.R. 674, 676-77 (Bankr. N.D. Ohio 2006).  Alternatively, the subsections of § 362(h) could be interpreted as terminating the automatic stay "unless debtor complies with both the Filing Requirement and the Performance requirement-i.e., fails to fulfill *either* one of the requirements."  *In re Mollison*, 463 B.R. at 180 (citing *In re McMullen*, 443 B.R.

67, at 72-73 (Bankr. E.D.N.C. 2010)). While the Court believes that the first suggested reading of

the statute is plausible, it rejects it as leading to absurd consequences as more fully explained below.

First, when Congress revised § 521(a)(2) and added § 362(h), it did not amend Rule 2003.

This Rule addresses the timing of the first § 341 meeting, which is "no fewer than 21 and no more

than 40 days after the order of relief." Fed. R. Bankr. P. 2003(a). Because first meetings are often

conducted *more than* 30 days after the commencement of the case, if the stay terminates 30 days

after the petition by operation of § 362(h)(1), this means the trustee did not have an opportunity to

conduct the first scheduled meeting of creditors and examine the debtor under oath. Therefore, it

would be impossible for a trustee to know whether non-exempt personal property of "consequential

value" even exists, much less be in a position to seek preservation of the asset as contemplated by

§ 362(h)(2). *In re Mollison*, 463 B.R. at 181 (Rejecting as absurd an interpretation of § 362(h)(1)

that would allow "for the termination of the Automatic Stay and removal of the property from the

bankruptcy estate at a time when it is highly probable that neither the trustee nor the other creditors

have had an opportunity to examine the debtor"). If the automatic stay terminates 30 days from

commencement, a trustee is prohibited from performing his or her § 704 duties. This would erode

past bankruptcy practices without a clear indication that Congress intended such a departure and

"eviscerate long-established practice and principles underlying the trustee's duties and ability to

preserve, marshal, and distribute estate assets." *Id.* at 181-182 (citing *Hamilton v. Lanning*, 130 S.Ct.

2464, 2473 (2110) (rejecting interpretation of the Bankruptcy Code that "would produce senseless

results that [the Court did] not think Congress intended.")).

A further plain reading of the statute demonstrates that § 362(h) imports § 521(a)(2) *in its*

*entirety* into that section. The statute does not say "the stay...terminates 30 days after the petition

if debtor fails to properly file a statement of intention," and further that "the stay . . . terminates 30 days following the first meeting of creditors if the debtor fails to perform the stated intention." Rather, § 362(h)(1)(A) and (B) are written in the conjunctive and both deadlines are incorporated into § 362(h)(1) with the language "the stay . . . is terminated . . . and [the] personal property shall no longer be property of the estate *if the debtor fails within the applicable time set by section 521(a)(2).*" 11 U.S.C. § 362(h)(1) (emphasis added).  If all of § 521(a)(2), rather than each of it's subparts in isolation, is incorporated into § 362(h)(1), the stay should not terminate until both deadlines pass.  Several courts recognize that a debtor's failure to comply with § 362(h)(1)(A) alone does not end that matter and, as a result, conclude that the automatic stay does not terminate until 30 days following the initial § 341 meeting.  *In re Norton*, 347 B.R. at 297 ("Section 362(h) does not expressly state which of the two § 521(a)(2) deadlines applies; however, because subsections (A) and (B) of § 362(h)(1) are in the conjunctive, thus requiring that both subsections (A) and (B) of § 521(a)(2) be met prior to termination of the automatic stay, the court finds the § 521(a)(2)(B) deadline to be determinative, since § 362(h)(1) cannot be triggered until the expiration of that particular deadline."); *In re McMullen*, 443 at 72 (by its plain terms, the statute provides that the stay terminates as to personal property securing a creditor's claim if a debtor fails, within applicable time limits, to file a statement of his intent with respect to that property "and" to timely act on intent specified, a debtor is required to do both to continue to protect collateral); *In re Mollison*, 463 B.R. at 182 (where a debtor fails to file (or file properly) a Statement of Intent *or* fails to perform according to his or her stated intent, the Automatic Stay will not terminate and personal property will not be removed from the bankruptcy estate pursuant to § 362(h)(1) until the expiration of 30 days after the first date set for the § 341 Meeting).

In *McMullen*, the debtor argued that the "'plain meaning of § 362(h)(1) clearly indicates that § 362(h)(1) and § 521[] are *not* implicated unless the debtor fails *both* to file timely a proper statement of intention and 'to take timely the action specified.'" *In re McMullen*, 443 B.R. at 72. (emphasis in original). This argument mirrors one of the arguments advanced by the Trustee in this case. The court in *McMullen* interpreted this argument as follows:

> [t]he automatic stay does NOT lift pursuant to § 362(h)(1) UNLESS the debtor BOTH fails to file timely a 'proper' statement of intention under § 362(h)(1)(A) AND fails to timely enter into a reaffirmation agreement . . . . in accordance with § 362(h)(1)(B)' [which] if numerically formatted would read: Stay unless no A and/or B.

*Id.* at 73 (emphasis in original). The court then rejected this interpretation of § 362(h)(1) because it meant a debtor could avoid having the stay terminate simply by filing the statement of intention but then not necessarily performing the stated intention. *Id.* at 73.[10] If a debtor could comply either with § 362(h)(1)(A) or § 362(h)(1)(B), subsection (B) is rendered meaningless and in contravention of "well-established principles of statutory interpretation that require statutes be construed in a manner that gives effect to all of their provisions." *Id.* (citations omitted). Accordingly, the *McMullen* court held that "the stay WILL terminate, IF the debtor fails to do not one, but two things,

---

10.    Debtors in this case argue that they "involuntarily" surrendered the Trailer post-discharge, which would suggest that their SOI did not reflect their true intention. The *McMullen* debtor also raised questions about the significance, if any, of the debtor's actual intent. However, the *McMullen* court summarily rejected that argument, stating, "[t]o the extent that the debtor infers from the statute that it is permissible to file a statement of intent without actually having *any* present intent of taking the stated action, and with the present intent of taking some other, different action that will defeat the stated intent, the court disagrees." *In re McMullen*, 443 B.R. at 73. The *McMullen* court continued to state that "[t]he good faith requirement inherent in all aspects of the Bankruptcy Code should preclude a debtor from filing a statement of intent to reaffirm and then entering into the reaffirmation agreement solely to further some other, and different, purpose of the debtor." This is so, particularly in light of the duties prescribed debtors in § 521(a)(2). *Id.* As this Court agrees with these sentiments, Debtors' claim that they involuntarily surrendered the Trailer is not supported by the record or Debtors' actions, which reflect otherwise in this case.

namely (A) and (B).  Doing one or the other, but not both, is not enough. The statute says "and" because a debtor must comply with both (A) and (B), otherwise the stay is terminated." *Id.* at 72. (emphasis in original).  Because this Court agrees that both §521(a)(2) requirements must be satisfied to avoid termination of the stay and it rejects the Trustee's argument to the contrary.  But the Court's inquiry doesn't end here because *McMullen* does not provide guidance when a debtor fails to properly file a statement of intention in the first instance whereas *Mollison* does.

The court in *Mollison* agreed with the conclusion reached in *McMullen* that a debtor must *"comply"* with each requirement before the stay terminates by operation of § 362(h)(1), rather than "fulfill" each § 521(a)(2) requirement as suggested in *Norton*. *In re Mollison*, 463 B.R. at 180 (emphasis in original). However, while debtor's failure to file a proper statement of intention or to perform triggers termination of the automatic stay in each instance "[g]iven the profound consequences that would redound to bankruptcy estates if the Automatic Stay terminated and property was removed from the estate 30 days after the petition date," *id.* at 181, the *Mollison* court was "compelled to conclude that the termination of the Automatic Stay and removal of property from the bankruptcy estate under § 362(h)(1) [could] not occur until the passage of the latter of the two deadlines found in § 521(a)(2)," *id.* at 182.

The Court aligns itself with the conclusion reached in *Mollison* that a debtor's failure to properly file a statement of intention or to perform according to a properly filed statement of intention will trigger termination of the automatic stay, but that the automatic stay does not terminate by operation of § 362(h) until 30 days after the first meeting of creditors takes place.  Unlike the *Mollison* court, however, this Court does not find § 362(h)(1) to be "ambiguous." *Id.* at 182 n.13 (suggesting that it has "rewritten § 362(h) in two respects.")  Rather, the conclusion that the second

15

deadline is decisive avoids undesired outcomes, gives meaning to the context of the of the statute as a whole rather than particular phrases in isolation, does not render § 362(h)(1)(B) meaningless, and leaves the chapter 7 trustee's time-honored § 704 duties intact.

Within this statutory framework, the Court now turns its attention to the merits of this case. Neither party disputes that Debtors complied with §§ 521(a)(2)(A) and 362(h)(1)(A) when they filed their Statement of Intention with the Petition on September 18, 2009, and gave notice of their intention to surrender the Trailer to M&T. It is also undisputed that the Trustee did not bring a motion pursuant to § 362(h)(2). Therefore, the outcome of Debtors' Motion turns on whether Debtors complied with their stated intention of surrender as contemplated by §§ 521(a)(2)(B) and 362(h)(1)(B).

Because the Code does not define the term "surrender," the Court is required to examine the ordinary meaning. *Hamilton v. Lanning*, 130 S.Ct. at 2471. The definition of surrender is "to yield to the power, control, authority, or possession of another; ...[to] cease trying to retain or control and to agree to yield." Webster's Third New International Dictionary Unabridged (2012). In applying the ordinary meaning of this word to the text and context of §§ 521(a)(2) and 362(h), the First Circuit Court of Appeals observed that because the Code does not define the term "surrender," and "Congress did not use the use the term 'deliver,'... one reasonably may assume that 'surrender' does not necessarily contemplate that the debtor physically have transferred the collateral to the secured creditor." *Pratt v. GMAC (In re Pratt)*, 462 F.3d 14, 18-19 (1st Cir. 2006) (citing *In re Cornejo*, 342 B.R. 834, 836-37 (Bankr. M.D. Fla. 2005). Rather, "the most sensible connotation of 'surrender'. . . is that the debtor agreed to make the collateral *available* to the secured creditor- *viz.*, to cede his possessory rights in the collateral - within 30 days of the filing of the notice of intention to surrender

possession of the collateral." *Id*. at 18-19 (emphasis in original).  Further, a debtor relinquishes its interest in the collateral when an intention to surrender is communicated in the statement of intention at which time the collateral becomes part of the bankruptcy estate if it is not exempted.  *In re Cornejo*, 342 B.R. at 836-37.  The surrender option is not synonymous with the term "deliver," but simply denotes relinquishment of any rights a debtor has in the collateral by taking no action to resist any efforts taken by the creditor to gain its collateral. *Id.* at 836-37.  "The Bankruptcy Code used the word 'deliver' when turning over physical possession is contemplated.  The Code draws a distinction between delivering and surrendering property.  The term surrender in [former] § 521(2)(A) was not intended to mean turning over physical possession for the lienholder." *Id.*  Finally, because the statute does not include language that requires a debtor to transfer title, a debtor is not required to execute and deliver a deed or to undertake some affirmative action to effectuate the surrender option.  *In re Theobold*, 218 B.R. at 135.

Although Debtors urge this Court to adopt the line of reasoning reached by some courts that require a debtor to "actually" surrender the personal property, *see In re Baine*, 393 B.R. at 567-68 (debtors failure to effectuate the statement of intention by actually surrendering the vehicle coupled with the trustee's decision not to file a § 362(h) motion resulted in termination of the automatic stay and has same effect as if trustee had abandoned property under § 554), this Court declines to do so because this interpretation of the term "surrender" requires a debtor to take some affirmative action to effectuate the option. Congress did not amend the statute in 2005 to place some affirmative duty upon debtors who elect the surrender option.[11]  Both former § 521(2) and revised § 521(a)(2) direct

---

11.  *Compare* § 521(a)(2) *with* § 543(b) (requiring custodian to deliver property of the debtor to the trustee unless excused under § 543(b)) *and* § 727(d)(2) (drawing a distinction between delivering and surrendering property).

a debtor to "perform," but when a debtor elects the surrender option, it does not impose an affirmative duty upon a debtor to actually deliver the collateral, but only to relinquish any claim to possession in it within 30 days of the petition. Therefore, when Debtors' stated an intention to surrender the Collateral at the commencement of this case, they relinquished their rights 30 days from the Petition.[12]

**CONCLUSION**

The best reading of § 362(h)(1) is that the automatic stay is terminated if the debtor fails to fulfill any of three requirements: (1) timely file a statement of intention; (2) properly indicate therein an intent to surrender, redeem, or reaffirm the obligation or assume an unexpired lease; or (3) perform as indicated. Debtors cannot, as they attempt to do here, escape the consequences of § 362(h) by filing a statement of intention but later challenging their own performance thereunder. Because Debtors complied with the requirements of §§ 521(a)(2) and 362(h)(1) in this case, the Trailer remained property of the estate and the automatic stay remained in effect until Debtors received their Discharge. *In re Moustafi*, 372 B.R. 434, 439 (Bankr. D. Az. 2007). Therefore, the Trustee did not need to bring a motion pursuant to § 362(h)(2). Accordingly, it is hereby

ORDERED, that Debtors Motion for Turnover is denied.

Dated at Utica, New York
this 28th day of March 2013

/s/ Diane Davis
Hon. Diane Davis
U.S. Bankruptcy Judge

---

12. Because the Court finds Debtors complied with §§ 521(a)(2) and 362(h)(1), it need not address their abandonment argument.